**RIVER OAKS CHRYSLER–PLYMOUTH, INC., et al., Appellants,**

v.

**Mary Josephine BARFIELD, Appellee.**

**No. 649.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

June 14, 1972.

Rehearing Denied July 12, 1972.

---

**926**

Jerry Nathe Parks, Don E. Harris, Don W. Graul, Harris, Archer, Parks & Graul, Houston, for appellants.

John E. Cahoon, Jr., Cahoon & Cahoon, Houston, for appellee.

BARRON, Justice.

This is a suit by Mary Josephine Barfield for alleged conversion of her automobile and a sum of money allegedly in the car when taken, for damages occasioned by the loss of a cow, and for damages resulting from loss of use of her automobile. On March 26, 1970, Mrs. Barfield left her car with River Oaks Chrysler-Plymouth, Inc., to have certain repairs performed on it. When the repairs were completed she picked up the car and tendered a check in the amount of $151.66 to defray the cost of the work. After she had returned home with the car she stopped payment on the check. An employee of River Oaks Chrysler-Plymouth called Mrs. Barfield and told her the car would be repossessed unless payment was made.

On the morning of April 16, 1970, Mrs. Barfield discovered that her front gate was open, her cattle were gone and her automobile was missing. She subsequently learned that River Oaks Chrysler-Plymouth, Inc., had the car in its possession. Approximately two weeks later this suit was filed. The trial court, sitting without a jury, rendered judgment in favor of plaintiff in the amount of $3,333.95 and River Oaks Chrysler-Plymouth, Inc., now appeals that judgment.

An automobile repair agency, by virtue of Tex.Const. art. 16, sec. 37, Vernon's Ann.St. acquires a valid artisan's lien on the automobile undergoing repairs. Christian v. Boyd, 222 S.W.2d 157 (Tex. Civ.App.—Fort Worth 1949, no writ). And loss of possession by the repair agency does not extinguish or waive the lien it holds. Shirley-Self Motor Co. v. Simpson, 195 S.W.2d 951 (Tex.Civ.App.—Fort Worth 1946, no writ). However, we found no authority which authorizes an artisan's lienholder summarily to repossess the chattel upon which he has labored once he has surrendered possession of it unless contractually provided. Thus, while appellant's artisan's lien can serve as a basis

for a suit for recovery of payment for services, it will not serve as a defense to an action for conversion.

■ Appellant contends that it also retained a "security interest" in the automobile in question under the terms of a document entitled "Customer Repair Order". This instrument is a sheet listing the services performed, parts used and labor expended in the repair of appellant's car, and the charge for each. The repair order is personally signed by appellee. In the lower left-hand corner of the repair order appear these provisions:

> "I hereby authorize the above repair work to be done along with the necessary material, and hereby grant you and/or your employees permission to operate the car or truck herein described on streets, highways or elsewhere for the purpose of testing and/or inspection. In consideration of repair and/or service work on the motor vehicle described herein, performed or to be performed by River Oaks Chrysler-Plymouth, Inc. (DEALER), and as security of the payment of charges to said work, *CUSTOMER*, whose signature appears hereon, either as Owner or Agent of Owner, *hereby grants to DEALER a security interest in said vehicle* (hereinafter called COLLATERAL). CUSTOMER agrees that DEALER'S acceptance of partial or delinquent payments or failure of DEALER to exercise any right or remedy shall not be a waiver of any obligation of CUSTOMER or rights of DEALER or constitute a waiver of any other similar default subsequently occurring. CUSTOMER shall be in default under this combined Security Agreement upon the happening of any of the following events or conditions:
>
> 1. Failure of CUSTOMER to pay DEALER'S charges in full at the time possession of COLLATERAL is returned to CUSTOMER, or, in the event CUSTOMER is approved for credit by DEALER, failure to pay DEALER'S charges in full within thirty (30) days from date of DEALER'S Invoice.
>
> 2. Any time DEALER believes that the prospect for payment of the obligation secured hereby is impaired.
>
> In the event of default, DEALER shall have the right at DEALER'S option to collect maximum delinquency finance charge of 1½% per month on the first $500.00 of CUSTOMER'S unpaid balance and 1% per month on CUSTOMER'S unpaid balance in excess of $500.00, such charge to become part of CUSTOMER'S obligation (1½% PER MONTH IS AN ANNUAL PERCENTAGE RATE OF 18%. 1% per month is an annual percentage rate of 12%), repossess and sell, without Court order, COLLATERAL at public or private sale, and DEALER may be the Purchaser at such sale for reasonable value, and CUSTOMER SHALL pay all reasonable attorney's fees and costs of repossession, storage and sale of Collateral. In the event repossession occurs, CUSTOMER agrees to surrender Title Certificate to COLLATERAL and assign same to DEALER. *CUSTOMER authorizes DEALER, in event of default, to repossess COLLATERAL without demand, and for this purpose to enter upon any premises where the COLLATERAL is located.* DEALER shall, in addition, have all the rights and remedies provided by the Uniform Commercial Code.
>
> CUSTOMER hereby acknowledges that this combined Security Agreement and Charge Account Agreement was completed before signature by CUSTOMER and a copy hereof was delivered to CUSTOMER at time of signing." (emphasis added)

Appellee does not claim lack of knowledge of these terms.

This document constitutes a valid chattel mortgage by which appellant received a lien on appellee's automobile to secure payment for repairs. The terms of the mort-

gage expressly entitled appellant to repossess the car without court order and to enter upon any premises where the car was situated. Where, as here, the mortgagee avails himself of the terms of the mortgage he is not guilty of a conversion. 12 Tex. Jur.2d Chattel Mortgages sec. 52 (1960). Moreover, the record in the present case reveals that the repossession was completely peaceful and lacking in any wrongful character.

One obstacle remains in the way of enforceability of appellant's security interest against appellee. Tex.Bus. & Comm.Code Ann. sec. 9.203 (1967), V.T.C.A. provides that,

"(a) . . . a security interest is not enforceable against the debtor or third parties unless

(1) the collateral is in the possession of the secured party; or

(2) the debtor has signed a security agreement which contains a description of the collateral. . . ."

Possession of the automobile was surrendered by appellant to appellee at the time appellee tendered her check in payment. Thereafter, in order for appellant legally to have recovered the automobile so as to enforce its lien, appellant must have had an agreement signed by the appellee which contained a description of the collateral automobile. We think the repair order reserving a security interest in the automobile in appellant's favor and signed by appellee does contain a description of the automobile sufficient to satisfy Article 9.-203. The order contains notations as to the brand of the automobile, the year, the model, the speedometer reading and the license number. Tex.Bus. & Comm.Code Ann. sec. 9.110 (1967) provides that:

"For the purposes of this chapter any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

We think the information recounted above "reasonably identifies" the automobile in question. This is particularly so in light of the fact that the current dispute is between the creditor and debtor, not between the creditor and a third party. The debtor is fully aware of what collateral is concerned and does not need any information in addition to that found in the work order in order to identify the car.

Because appellant was fully entitled to repossession by virtue of the signed repair order imposing a lien upon appellee's automobile, the trial court was in error when it allowed appellee recovery for conversion of the automobile. We think the record amply supports an award of $333.95, the amount of cash allegedly in the glove compartment of the car when it was removed from appellee's garage. Appellee is entitled to possession of her vehicle subject to her liability, if any, for the cost of repairs, which we do not pass upon.

Affirmed in part and reversed and rendered in part.